*MCH: 7.4.2025*
KSC/JGO: USAO#2025R00156

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. ELH-25-087** |
| | * | |
| **ELISEO ALEXANDER LOPEZ ALVAREZ,** | * | (RICO  Conspiracy,  18  U.S.C. |
| **aka 10, Zorro, Terrible,** | * | § 1962(d); Possession of Ammunition |
| **JOSUE ANIBAL GUERRA RAMOS,** | * | by a Prohibited Person, 18 U.S.C. § |
| **aka Flaco,** | * | 922(g);  Forfeiture,  28  U.S.C.  § |
| **OLVIN JOSUE POSAS ALVARENGA,** | * | 2461(c), 18 U.S.C. § 924(d)) |
| **aka Elevado,** | * | |
| **KEVIN CUESTAS,** | * | |
| **aka Mickey, Gemelo,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## SUPERSEDING INDICTMENT

### COUNT ONE

#### (Conspiracy to Participate in a Racketeering Enterprise)

The Grand Jury for the District of Maryland charges that:

#### Introduction

1.      *La Mara Salvatrucha*, also known as the MS-13 gang ("MS-13"), was a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including in Baltimore City, Baltimore County, Anne Arundel County, Montgomery County, Prince George's County, Frederick County, and throughout the United States.

2.      The name "Mara Salvatrucha" was a combination of several slang terms.  The word "Mara" was the term used in El Salvador for "gang."  The word "Salvatrucha" was a combination

1

of the words "Salva," which was an abbreviation for "Salvadoran," and "trucha," which was a slang term for "fear us," "look out," or "heads up."

3.　　In the United States, MS-13 has been functioning since at least the 1980s. MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups. MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Maryland.

4.　　MS-13 was a national and international criminal organization and was one of the largest street gangs in the United States. Gang members actively recruited members, including juveniles, from communities with a large number of Central American immigrants.

5.　　**ELISEO ALEXANDER LOPEZ ALVAREZ, JOSUE ANIBAL GUERRA RAMOS, OLVIN JOSUE POSAS ALVARENGA, KEVIN CUESTAS,** and others known and unknown, were members and associates of MS-13.

6.　　Members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering. Members also signified their membership through tattoos of devil horns in various places on their bodies. Members sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying the phrase "*mi vida loca*," or clown faces with phrases such as "laugh now, cry later." Some MS-13 members have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered to conceal their gang affiliation from law enforcement.

7.　　The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added

together, totaled 13, such as "76." MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as the Nike "Cortez" sneakers. As with tattoos, some MS-13 members selected more discreet ways of dressing to signify their membership and at the same time avoid detection by law enforcement.

8.      MS-13 members referred to one another by their gang names, or monikers, and often did not know fellow gang members except by their gang names.

9.      Members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence. MS-13's creed was based on one of its mottos, "*Mata, viola, controla*," which translated in sum and substance to, "Kill, rape, control."

10.     Members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, drug trafficking, robbery, and extortion, as well as attempts and conspiracies to commit such offenses. MS-13 members were required to commit acts of violence to maintain membership and discipline within the gang, as well as against rival gang members. Participation in criminal activity by a member, particularly in violent acts directed at rival gangs or as directed by gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position. One of the principal rules of MS-13 was that its members must attack and kill rivals whenever possible. Rivals were often referred to as "*chavalas*." MS-13, particularly in the areas of Baltimore City, Baltimore County, Frederick County, Anne Arundel

County, Prince George's County and Montgomery County, Maryland, maintained rivalries with the 18th Street gang, among others.

11.    Prospective members who sought to join MS-13 were required to prove themselves over time.  Individuals who associated with and were friends of the gang were called "*paisas*." Individuals who did favors and other acts for the gang were called "*paros*."  Persons being observed by the gang for potential membership were known as "*observations*."  Individuals who had advanced to the final level before being "jumped in" were called "*chequeos*." *Chequeos* underwent a probationary period during which they were required to commit additional, more serious crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang.  In some cases, the lower levels of the gang were simplified to just two ranks, such as "*collaborator*" and "*futuro*."  To join MS-13 and become full members or "homeboys," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang.  During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

12.    MS-13 was an international criminal organization, and was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region.  Cliques operated under the umbrella rules of MS-13.  MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In Maryland and the surrounding area these cliques included, among others, the Centrales Locos Salvatrucha ("CLS" or "Centrales"), Fulton Locos Salvatrucha ("FLS" or "Fulton"), Western Locos Salvatrucha ("WLS" or "Western"), and Parkview Locos Salvatrucha ("PVLS").  MS-13 cliques also joined together to form regional or national "programs" to assist with coordination

among cliques and oversight. Clique leaders regularly met with each other and "program" leadership.

13.    **ELISEO ALEXANDER LOPEZ ALVAREZ, JOSUE ANIBAL GUERRA RAMOS, OLVIN JOSUE POSAS ALVARENGA,** and **KEVIN CUESTAS** were members and associates of the Centrales Locos Salvatruchas or CLS Clique of MS-13.

14.    Each clique was presided over by the "First Word," the leader or president of the clique. The leader was also sometimes referred to as "*Primera Palabra,*" or "*Corredor.*" The "Segundo Palabra," or "Second Word," was the second-in-command of the clique. General members were required to take orders from the First Word and Second Word. Clique leaders would often designate particular homeboys to take leadership positions over certain geographical areas.

15.    MS-13 cliques kept in contact and reported to the leaders for their respective cliques, who were oftentimes based in various states or in El Salvador. Cliques contacted their leaders based in other states or El Salvador using cellular telephones during clique meetings to keep them updated on gang business, for advice, and to resolve disagreements regarding operations among local cliques.

16.    MS-13 members met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members, with the goal of inciting and encouraging further violence. Each clique held clique meetings where business specific to that clique was discussed. Any perceived indiscretions by members or violations of MS-13 rules were talked about at clique meetings and punishments or "violations" were issued. Violations often took the form of beatings by fellow MS-13 members, often referred to as "court." More serious violations resulted in the issuance of a "greenlight," which was an order and/or approval to kill.

17.    MS-13 leaders from various cliques also held regional meetings to discuss issues between cliques and discuss criminal ventures among the cliques.  Clique leaders from across the United States, from other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

18.    MS-13 received money and income from sources including member dues and the extortion or "taxing" of brothels and other illegitimate businesses, as well as narcotics trafficking. Extortion payments were often referred to as "rent."  Such funds were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, both inside and outside of Maryland, and in El Salvador.

19.    MS-13 members communicated about gang activities with other MS-13 members in Maryland and elsewhere using mobile telephones, telephone text messages, messaging applications, such as WhatsApp and Telegram, social media such as Facebook and Instagram, e-mail accounts, and other modes of communication.

### The Racketeering Enterprise

20.    MS-13, including its leaders, members, and associates, constituted an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected interstate and foreign commerce ("the MS-13 Enterprise"). The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### Purposes of the Enterprise

21.    The purposes of the MS-13 Enterprise included:

6

          a.      Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, threats of violence, and violence, including assaults and murder;

          b.      Promoting and enhancing the enterprise and its leaders', members', and associates' activities, including, but not limited to, murder, extortion, drug trafficking, and other criminal activities;

          c.      Keeping victims, potential victims, and community members in fear of the enterprise through violence and threats of violence;

          d.      Providing financial support and information to gang leaders, members, and associates, including individuals incarcerated;

          e.      Providing assistance to gang leaders, members, and associates who committed crimes on behalf of the enterprise; and

          f.      Hindering, obstructing, and preventing law enforcement officers from identifying participants in the enterprise's criminal activity; from apprehending the perpetrators of those crimes; and from successfully prosecuting and punishing the offenders.

### Means and Methods of the Enterprise

22.    Among the means and methods by which the members and associates of MS-13 conducted and participated in the conduct of the affairs of the Enterprise were the following:

          a.      The members and associates of MS-13 used intimidation, threats of violence, and violence, including assaults and murder, to preserve, expand, and protect MS-13's territory and activities, to promote and enhance its prestige, reputation, and position in the community, and to discipline gang members who had been disloyal or had violated gang rules.

b.      The members and associates of MS-13 attended regular gang meetings and communicated with other MS-13 members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; identifying for the purpose of assaulting or murdering rival gang members and others; efforts to increase gang income, through means such as drug trafficking and extortion; MS-13 leaders, members, and associates who had been arrested or incarcerated; disciplining MS-13 leaders, members, and associates who had violated gang rules; police interactions with MS-13 leaders, members, and associates; the identities of individuals suspected of cooperating with law enforcement, and proposed actions to be taken against them; and plans and agreements regarding the commission of future crimes, as well as ways to conceal these crimes.

c.      The members and associates of MS-13 also communicated with other MS-13 members in Maryland and elsewhere, and represented their gang allegiance, through social media such as Instagram, including by posting photographs of themselves with other gang members, showing gang hand signs, wearing colors or clothing associated with MS-13, and posing with weapons or gang-related graffiti, and by sending and/or posting messages, images, and memes referencing their affiliation with MS-13.

d.      The members and associates of MS-13 financed the enterprise through a variety of activities, including the extortion of money – sometimes referred to as "rent" – from legitimate and illegitimate businesses operating on the gang's turf.

e.      The members and associates of MS-13 distributed and agreed to distribute controlled substances on behalf of the gang.

f.      The funds raised by the gang were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States, inside and outside of Maryland.

g.      The members and associates of MS-13 hindered and obstructed the efforts of law enforcement to identify, apprehend, and successfully prosecute and punish gang members.

h.      The members and associates of MS-13 would investigate rival gang members or other persons targeted for violence; would obtain information about such targets, including locations frequented by them; and would use such information in their plans to attack such targets.

i.      The members and associates of MS-13 would and did agree that acts involving murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

**The Racketeering Conspiracy**

23.     Beginning on a date unknown, but at least prior to in or about 2023, and continuing through at least in or about the date of this indictment, in the District of Maryland and elsewhere,

**ELISEO ALEXANDER LOPEZ ALVAREZ,**
**aka 10, Zorro, Terrible,**
**JOSUE ANIBAL GUERRA RAMOS,**
**aka Flaco,**
**OLVIN JOSUE POSAS ALVARENGA,**
**aka Elevado,**
**KEVIN CUESTAS,**
**aka Mickey, Gemelo,**

the defendants herein, and others known and unknown, being persons employed by and associated with MS-13, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly conspire to violate 18 U.S.C. § 1962(c), that is to conduct and participate directly and indirectly, in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of racketeering activity consisted of:

      (a)    Multiple acts involving:

            (1)    murder in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, 1-201, 1-202, and the Common Law of Maryland; and

            (2)    extortion, in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, 1-201, 1-202, and the Common Law of Maryland;

      (b)    Multiple offenses involving drug trafficking in violation of 21 U.S.C. §§ 841 and 846; and

      (c)    Multiple acts indictable under 18 U.S.C. § 1951 (relating to interference with commerce by extortion).

      24.    It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Overt Acts

      25.    In furtherance of the conspiracy, and to effect the illegal object thereof, the defendants and their co-conspirators performed, participated in, and did the following acts, among others, in the District of Maryland and elsewhere:

      a.     In or about November 2023, **ELISEO ALEXANDER LOPEZ ALVAREZ**, **OLVIN JOSUE POSAS ALVARENGA**, and others conspired to murder Victim C.O. because C.O. was believed to be associated with a rival gang.

      b.     In or about November 2023, members of CLS created a fake Instagram account that appeared to be a female and "friended" C.O. via Instagram.

      c.     On or about the evening of November 30, 2023, **ELISEO ALEXANDER LOPEZ ALVAREZ** and other members of MS-13 used the fake Instagram account to lure C.O. to an area in southeast Baltimore.

      d.     Late in the evening of November 30, 2023 or in the early morning hours of December 1, 2023, **ELISEO ALEXANDER LOPEZ ALVAREZ**, **OLVIN JOSUE POSAS ALVARENGA**, and other members of MS-13 met C.O. at the location where C.O. believed he was meeting the female user of the fake Instagram account.

      e.     The members of MS-13 moved C.O. to a nearby wooded area where **OLVIN JOSUE POSAS ALVARENGA** and other members of MS-13 shot and killed C.O.

      f.     In or about March 2024, members of MS-13 conspired to kill Victim M.N. because they believed he was a member of a rival gang.

      g.     On or about March 15, 2024, **KEVIN CUESTAS** and another member of MS-13 located M.N. on the street in southeast Baltimore and shot him multiple times, killing him, and fled the scene in a getaway car.

      h.     On or about March 17, 2024, **KEVIN CUESTAS** spoke on a recorded jail line with an incarcerated member of MS-13 and told the incarcerated member that the "waters were hot" because he just recently "ate a roosted chicken."

11

i.    On or about the late evening of April 6, 2024, GUERRA RAMOS and another MS-13 member located Victims J.C. and M.M. on the street in southeast Baltimore.

j.    **JOSUE ANIBAL GUERRA RAMOS** and the other MS-13 member shot at J.C. and M.M. multiple times, striking both, resulting in the death of J.C.

k.    On or about May 17, 2024, **JOSUE ANIBAL GUERRA RAMOS** possessed one round of 9mm ammunition at his residence, which 9mm around of ammunition was the same brand as some of the ammunition used during the April 6, 2024 shooting.

l.    On or about April 7, 2025, **OLVIN JOSUE POSAS ALVARENGA**, who was in jail, used a recorded jail line to call **KEVIN CUESTAS** and advise him to tell other MS-13 members to be alert because of recent law enforcement activity and to "leave on vacation."

m.    Between in or about 2023, through the date of this indictment, **ELISEO ALEXANDER LOPEZ ALVAREZ, JOSUE ANIBAL GUERRA RAMOS, OLVIN JOSUE POSAS ALVARENGA, KEVIN CUESTAS**, and other members and associates of MS-13 conspired to distribute marijuana to raise funds for MS-13 to purchase marijuana and weapons for the gang and to send to MS-13 members and associates in Maryland and other states.

n.    Between in or about 2023, through the date of this indictment, members MS-13 extorted money from victims by threatening and using force, violence, and fear.

### Special Sentencing Factors Regarding Count One

26.    As part of their agreement to conduct and participate in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, the defendants committed the following act:  In or about November 2023, in the District of Maryland, **ELISEO ALEXANDER LOPEZ ALVAREZ** and **OLVIN JOSUE POSAS ALVARENGA** did unlawfully conspire and agree with each other and with others known and unknown to the Grand Jury to feloniously,

willfully, and with deliberately premeditated malice, kill and murder Victim C.O., in violation of Maryland Code, Criminal Law § 2-201, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

27.   As part of their agreement to conduct and participate in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, the defendants committed the following act:   On or about November 30, 2023, in the District of Maryland, **ELISEO ALEXANDER LOPEZ ALVAREZ** and **OLVIN JOSUE POSAS ALVARENGA** feloniously, willfully, and with deliberately premeditated malice, killed and murdered and aided and abetted the killing and murder of Victim C.O., in violation of Maryland Code, Criminal Law § 2-201 and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 2-201.

28.   As part of his agreement to conduct and participate in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, the defendant committed the following act:   In or about March 2024, in the District of Maryland, **KEVIN CUESTAS** did unlawfully conspire and agree with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim M.N., in violation of Maryland Code, Criminal Law § 2-201, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

29.   As part of his agreement to conduct and participate in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, the defendant committed the following act:   On or about March 15, 2024, in the District of Maryland, **KEVIN CUESTAS** feloniously, willfully, and with deliberately premeditated malice, killed and murdered and aided and abetted the killing and murder of Victim M.N., in violation of Maryland Code, Criminal Law

§ 2-201 and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 2-201.

30.     As part of his agreement to conduct and participate in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, the defendant committed the following act:  In or about April 2024, in the District of Maryland, **JOSUE ANIBAL GUERRA RAMOS** did unlawfully conspire and agree with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim J.C., in violation of Maryland Code, Criminal Law § 2-201, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

31.     As part of his agreement to conduct and participate in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, the defendant committed the following act:  On or about April 6, 2024, in the District of Maryland, **JOSUE ANIBAL GUERRA RAMOS** feloniously, willfully, and with deliberately premeditated malice, killed and murdered and aided and abetted the killing and murder of Victim J.C., in violation of Maryland Code, Criminal Law § 2-201 and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 2-201.

18 U.S.C. § 1962(d).

## COUNT TWO

The Grand Jury for the District of Maryland further charges that:

On or about May 17, 2024, in the District of Maryland, the defendant,

**JOSUE ANIBAL GUERRA RAMOS,**
**aka Flaco,**

knowing he was an alien illegally or unlawfully in the United States, knowingly possessed one round of ammunition, to wit, one round of CBC 9mm Luger ammunition, and the ammunition was in and affecting commerce.

18 U.S.C. § 922(g)(5)(A)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 924(d), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c), in the event of the defendants' convictions.

### Firearms and Ammunition Forfeiture

2.      Pursuant to 18 U.S.C. § 924(d), upon conviction of the offense alleged in Count One, the defendant(s) shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearms and ammunition involved in the offenses.

3.      Upon conviction of the offense alleged in Count Two of this Indictment, the defendant,

### JOSUE ANIBAL GUERRA RAMOS,

shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearms and ammunition involved in the offense, including but not limited to:

   a.   approximately one (1) round of CBC 9mm Luger ammunition.

### Substitute Assets

4.      If, as a result of any act or omission of the defendants, any of the property described above as being subject to forfeiture:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third person;

   c.   has been placed beyond the jurisdiction of the Court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be divided without difficulty,

16

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 924(d)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Kelly O Hayes/JGO

KELLY O. HAYES
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED  7|9|25

Foreperson              Date:

17